Case of the Morning Call 2-11-0993 Policemen's Benevolent Labor Committee v. County of Kane Sheriff Patrick Perez, Karen McConaughey, Chairman of the Kane County Board, and the Illinois Labor Relations Board as intervenors. On behalf of the County of Kane and Karen McConaughey, Mr. Lawrence J. Weiner, on behalf of the Illinois Labor Relations Board, Sheriff Brian Barrow, on behalf of the Illinois Labor Relations Board, Mr. Timothy D. O'Neill. Are you Mr. Weiner? I'm Mr. Barrow. You're Mr. Barrow. Okay, I knew one of you was going to go first and one of you was going to go second. I'm very sharp in some ways. I just wasn't sure which was which. You may proceed, Counsel. Thank you. May it please the Court, Brian Barrow, Assistant Attorney General, on behalf of the Plaintiff and Intervenor Appellant, Illinois Labor Relations Board. There are two remaining issues in this case that bear on the right of the Kane County Security Officers to arbitrate the terms and conditions of a new collective bargaining agreement, a process commonly referred to as interest arbitration. The primary issue is do the Kane County Security Officers have a right to interest arbitration under Section 17 of the Illinois Labor Relations Act? The Circuit Court found, and at this point I don't think any parties disagree on the fact that the petitioners, the Kane County Security Officers, are not asserting a right under Section 14A. They're not within the group of sort of classifications that are given the right to interest arbitration. So they're agreeing they're not peace officers and they're agreeing that they're not security employees? That's what the Circuit Court found and they've, I believe, abandoned that in there. Well, wouldn't they have to file a cross-appeal if they disagreed with that or not? No, you're right. Do they have to be asking for alternate relief rather than alternate argument? Correct. So under Section 17A, public employees can bargain for interest arbitration. Here, the 2008 collective bargaining agreement issue contains no mention of interest arbitration. Plaintiffs here are focused on the fact that they waive their right to strike within the contract. And under Section 17A, if you bargain for interest arbitration, you waive your right to strike. But the converse is not true under the statute. Simply waiving your right to strike does not give right to interest arbitration. Are they waiving their right to strike at any time or only during the terms of the contract? During the effective life of the contract. During the terms of the effective life of the contract, Your Honor. Now, the parties have entered into a memorandum of understanding, and there's two ways to view this case. If the memorandum of understanding is an effective extension of the contract, then they waive their right to strike under the memorandum of understanding. If it's not an effective extension of the contract, they have the right to strike and they don't have the right to interest arbitration. But in either case, they haven't bargained for a right to interest arbitration. The right to strike, as the Court has made clear, is a statutory tradeoff under Section A for bargaining for grievance arbitration. So, they've bargained for grievance arbitration. They have to include the waiver of the right to strike within their contract. And that goes only to the right of grievance arbitration, not the right of interest arbitration. And grievance arbitration, the difference between the two is grievance arbitration is grievinging over the enforcement of the terms of the contract. If you have a dispute within the terms of the contract, that goes to grievance arbitration. If you're bargaining over the terms and conditions of the contract, that's known as interest arbitration. Well, would it be correct to say that grievance arbitration covers everything other than what would be deemed to be interest arbitration? I think that's a fair statement, yes. As long as it's going to be… Because interest arbitration is kind of an offshoot or a different branch where all you're really doing is allowing some third party to determine what the terms of the agreement will be. Yes, that's correct. And that's the only definition. And so, either there is grievance arbitration, interest arbitration, with the narrow definition of interest arbitration. If grievance arbitration doesn't cover everything, then there must be a third segment which hasn't been named yet. Right. Correct. So, at least for the practical purposes of this case, we're talking about the two, grievance arbitration or interest arbitration. Counsel, could we conclude, given the unlimited duration of this memorandum of understanding and Section 1782 of the Act, that the court security officers were actually prohibited by law from striking under the circumstances, and therefore they would be entitled to interest arbitration? No, I don't think so. And why not? Because the law, under Section 14, sets forth the categories of the public employees that are subject, are allowed interest arbitration. Those are peace officers, paramedics, firefighters, employees, certain employees like that. There's no question that under Section 3 of the Act that the court security officers are not, will not fall within any of those categories. They're not peace officers. Obviously, they're not paramedics or firefighters. They're not correctional officers, security employees. They're not correctional officers. Now, the parties could have limited their memorandum of understanding unquestionably. They could have bargained for six months or a year or any other termination. They could have even bargained for interest arbitration in the memorandum of understanding, but they didn't. So if the memorandum of understanding only extends the other contract, they've basically waived their right to strike in the memorandum of understanding. But that does not give rise to sort of a springing right to interest arbitration under Section 17 of the Act. Where do you think the judge erred in either his findings or his conclusions of law? Well, I think the court may have been looking at, and this goes to our second argument, that the court security officers might or could be considered essential employees under Section 18 of the Act. And essential employees under Section 18 of the Act are those employees where to have them go on strike would be detrimental to public health and safety. It's conceivable, I mean, the courts obviously can't shut down for extended periods of time, or at least parts of them can't. So, I mean, without predetermining the case, an argument, I suppose, could be made that court security officers could be at some point declared, or some of them could in some instances, essential employees to keep the courts open. But at this point, it's premature. There's been no strike. There's been no threat of a strike. There's a process to go through before you become an essential employee. First, you go to the labor board and say, we're essential employees. And the labor board has to determine who, if any, is an essential employee. Then you go to the circuit court and ask for a petition. And the circuit court can set different conditions and terms on who has to go back to work and who doesn't have to go back to work. And it's those employees that do have to go back to work that are enjoined from striking. They then would have a right to interest arbitration. But we're a long way from that point in this case. So I think the court was sort of... We're a long way from there. If the trial court, I thought, correct me if I'm wrong, determined that since there was no right to strike, that these people were entitled to interest arbitration, did he not do something like that? He did something like that, but he didn't. There's a, again, there's a problem. There was no hearing. First, there has to be an actual threat of strike or a strike itself. Then there has to be a hearing before the labor court. There's been no threat of strike or threat of strike. There's been no hearing before the labor court. I thought he said something to the effect that because they gave up the right to strike, they were on the same foundation or basis as peace officers and security employees. If he said that, that was error. In that sense, it was error because they're not on the same basis as peace officers or security employees. They're not on the same basis as peace officers and security employees have the right to interest arbitration and the prohibition on the right to strike as a matter of law under Section 3 of the Act. I think that means your time is up, sir. You'll have a chance to take rebuttal. Thank you, Your Honor. May it please the Court, following up on your questions, they voluntarily gave up the right to strike. On November 30th of 2008, that contract, which only precluded them from striking during its duration, expired. And they came in and voluntarily entered into the MOU, Your Honor. So they didn't have to do that. They had the absolute and unequivocal right to strike until they entered into the MOU. But because they voluntarily gave up the right to strike does not give them the right to interest arbitration. Simply stated, if you follow that logic, then every time any public sector union would give up the right to strike after it had the right to strike, they would be entitled to interest arbitration. And that would mean that basically every contract would be determined not by the public entity, but following up on Your Honor's question, but by a third party arbitrate who is going to set the terms and conditions of the collective bargaining agreement. The interest arbitration is unique in our system. Every contract under the Labor Act must contain a binding arbitration clause, but even the access for the duration of the agreement. And the arbitration that's provided under the Act, as is provided under this contract, by the way, is what we call grievance arbitration. Where the arbitrator is severely limited. He cannot subtract, add from, modify, change any of the terms of the collective bargaining agreement. All he can do is interpret those terms as they exist. He doesn't create any terms. He's barred from creating any terms. So basically, if you rule in favor of this union, you're going to allow the expropriation, the ceding of the power of municipal entities throughout the state, and the state itself for that matter, which is bound by that agreement. In all of its 35 collective bargaining agreements amounting to 55,000 people. They're all going to be subject to interest arbitration. If the union says, well, hey, we prefer, you want to... Just out of curiosity, what's wrong with that? What's wrong with it is that it divests the discretionary, non-dedicable duty and powers of the municipal and state entities to a third party. What's wrong with that? It's okay. It's okay if it's agreed to by the parties. You mean it's a conceptual thing? Why have a third party? Does the statute authorize it? It authorizes it in only three limited situations. So you're basically arguing that there's no statutory authority for interest arbitration, except in a few exceptions, and this isn't one of them. But there's also provision that you can agree to it. There's a specific provision. So now we're talking four different situations? Well, there's a provision in the general provisions. There's a provision you can agree. The parties can agree, mutually agree, to interest arbitration. And what's wrong with it? It divests all the power and authority of the employer to a third party. Isn't that something that the legislature determines, not us? Exactly. Specifically, they've determined it. And the legislature did determine when interest arbitration is applicable. And none of the four instances are here. They're not firefighters. They were excluded. So now you're making a legal argument instead of a philosophical one. No, I prefer the philosophical one. Which was people shouldn't be burdened with having some third party make a determination as to what should happen. Well, the third party could get 10% raises or 20% raises for 10 years. That's an economic argument. Well, it's a philosophical one as to whether a municipality can serve. I'm only concerned, sir, with legal arguments. Unless you're asking us to find that these policies are against constitutional rights, we're dealing here with what the statute and what the case law provides. And the concept of placing bargaining powers of third persons or third parties is not something that is open to judicial gaze, other than whether or not it comports with the statutes or the constitution or the case law that's previously been decided. The best argument I can make along that line legally is the argument, actually, the expressio unus alterius es argument, where if the legislature intended there to be interest arbitration as distinguished from grievance arbitration, it would have so provided. But it didn't. It only provided interest arbitration where strikes were precluded, quote, as a matter of law, close quote, and under four specific circumstances. Those were the only exclusions to just having grievance arbitration. And none of the exclusions applied here. They're not essential employees because that would require a decision by the labor board and a decision by the circuit court after a strike has been called or is impending. None of that applies in this case. So how did the trial court commit error? The trial court committed error by basically saying they were essential employees because in the event there was some strike in the future, they would have to work to maintain these inmates that were at the courthouse. He discussed the impact that a strike would have on the justice system itself, that the system would come to a halt because you couldn't hold the court is essentially what he said. And he was basically making policy as your argument, correct? Yes. And I disagree, by the way, with the conceivability that courts wouldn't go on, although I guess it's conceivable. I guess maybe that is the right word. But in fact, if the court security officers weren't there, then the sheriff's deputies would take place. So the correctional officers would come in and do that work anyway. So I'm not concerned. But even if they ran short and they needed some of these employees, and if they were needed on an individualized basis, which is the way it's determined, by the way, on an individualized basis, who's an essential service employee during a strike? There's actually a determination made as to each individual and whether their services, their lack of services, would be a danger to the health and welfare of the citizens. But now you agree with the trial court's finding that they were not 14A employees. Correct. But you don't agree with the conclusion that they were entitled to interest arbitration. Right, because they had voluntarily given up the right to strike. And because in the event of some strike, if a strike was impending or occurred at some time in the future, they might be determined to be security employees, or I mean essential services employees.  Thank you, Your Honor. Thank you. Mr. O'Neill. Good morning, Your Honors. Colleagues, right off the bat, I want to say we are not looking to create new law by upsetting the statutory scheme of the labor act across the state of Illinois. What we are asking the court to consider is that this is a very unique case that was determined by a unique procedure by the Illinois Labor Relations Board. The facts show that the parties were at negotiation, were at impasse after mediation. The union petitioned the labor board as it must under the code for an interest arbitrator. The employer filed an objection to that. The labor board then invited the parties to submit position papers on the scheme and the unique circumstances of this case. And at that time, instead of making a decision one way or the other, in essence, the labor board punted and said to the union, the plaintiff's affiliate here, file an unfair labor practice with us or go to the circuit court for a determination on this issue as to whether these unique, specific set of employees are eligible for interest arbitration under the act. That's what was done. Well, it sounds like you're saying that a punter doesn't exist because if a punter punts and the punting isn't an action, then how can something that doesn't have an action or reaction actually exist? So, technically, the fact that they punted is that they did something. It just is that it was very unorthodox. I agree with you, Your Honor. And then the circuit court was left with what the ILRB left them to do. There was a deck action claiming two theories, how these officers were entitled to interest arbitration. Is it your position that the best thing they should have done was possibly to have denied or granted? If they denied it, then you'd have had an administrative review from that decision? My position would have been that they would have made a decision one way or the other. And then you would have had administrative. Exactly. And then these issues could have been determined under that procedure. Again, this procedure in this case is not, we admit it's not pursuant to the statutory scheme, but that's what we were directed to do by the Illinois Labor Relations Board. Judge Mueller followed what the Labor Board wanted him to find, and he made certain findings. The keys in this case are, are they essential services employees as Judge Mueller found? That was one of the two theories of liability that the union pleaded in its complaint for declaratory judgment. He did find that way. He found essentially that our court system, which is, as all of you know, the backbone of our system of democracy, could and would grind to a halt without the officers in the courtroom providing security not only for the court, but for all the rest of the citizens that utilize the court system. But there was no emergency in front of him, and they had not gone through the necessary steps to get to that point, correct?  But again, he was left with what the Labor Board directed him to do. He could have sucked it back to the Labor Board. What the, what the, I think he could. But what the director of the Labor Board said, they wanted the circuit court to make the determination, and then for an order from the circuit court, if he found in favor of the petitioner, to order them to proceed to interest arbitration, which is exactly what Judge Mueller did. Now, are you still contending that court security officers are security employees, or have you abandoned that argument? We've never taken the position that they are protected, Section 14. We're taking the position that this is an exception under the statute. An exception under which section of the statute? Under 14P. P. You said P as in Peter? Yes. The employer and exclusive representative may agree to submit unresolved disputes concerning wages, hours, terms, and conditions to an alternative form of impasse resolution. That was our second theory of liability. This unit was certified by consent of the parties in 1995. In 1997, the statute of issue where they were exempted from Section 14 protection came in, the legislature passed it, went into effect, I believe, June 1st, 1997. The collective bargaining agreement went into effect a year before, in 1996, and has remained unchanged to that time. The other two units, which are Section 14 employees, being the security employees, the corrections officers, and the peace officers, have the same exact language. Now, whether that was a question of using the same template for the contracts, I don't know. I wasn't there. The only evidence in this case is the sworn testimony of Sheriff Ramsey, who was the sheriff at that time, and who signed off on the initial collective bargaining agreement, and it has remained unchanged to this time. He said, because he wanted all of his employees to be treated equally, it was his intent that the no-strike clause for the court security officers, as were the corrections and peace officers, would give the court security officers the right to interest arbitration. That's in his affidavit. Now, Judge Mueller didn't comment on that theory in his finding. He just concentrated on the essential services argument. He didn't say yes or no on the contractual issue, the 14P argument. But this was a fully integrated agreement, was it not? We really can't look to the sheriff's affidavit. It's parole evidence, isn't it? I mean, there's an integration clause in this collective bargaining agreement, correct? An integration clause that's all-inclusive? Yes, there is. But when this issue came up, it wasn't an issue with Sheriff Randall, because all three bargaining agreements, which are a part of the record, read the exact same. And he's testifying that it was his intent that he wanted all the employees to be treated the same, i.e., that the court security employees have the right to interest arbitration. Well, they could have provided that specifically, could they not, counsel? Right, but just because there's an absence of it doesn't mean it didn't occur. The employer could have inserted that into the agreement as well, saying this no-strength pledge does not give the court security officers the right to interest arbitration. Was Sheriff Ramsey the sheriff after the commendatory legislation was passed? Sheriff Ramsey, as his affidavit stated, was sworn into office December 1, 1994, until he sat down in October 2006. So if he had interpreted the amendatory language to exclude the courthouse security, he could have, consistent with his intent to treat everyone equally, put an interest arbitration clause in the agreement. That's true, he could have. That's one of the ways to look at it. The co-employer also could have insisted on that as well. This contract rolled over from time to time. It didn't change. It expired November 30, 2008. The officers decertified from NASME and petitioned the ILRB to be represented by the PBLC. Could you or your opponents file a petition for writ of mandamus against the Department of Labor? Could we? Yes, Labor Relations Board. In other words, it seems like, going back, your argument about they should have made a decision one way or the other. It would have been a lot cleaner, Your Honor, yeah. A mandamus? Yeah. Beside the issue, please. But again, the statute leaves much of the policy decisions and procedural decisions to the Labor Board. And we were following the lead of what the Executive Director of the Labor Board told us to do. And now the Labor Board comes in through the Attorney General and says, well, we didn't mean it that way. It shouldn't have happened that way. We're at a distinct disadvantage. We did what they wanted us to do. Now they're crying foul. They created the situation outside of the statutory scheme. The Circuit Court went along with what the Labor Board directed the parties to do. And now all the parties are here crying foul that this is the wrong way to do it. Again, I have to emphasize, we're not looking to create new law. We're not looking to set employees across the state free from the statutory scheme. Only in this unique circumstance, under this unique contract, under the unique procedure laid down by the Labor Board, are we asking the court here to find that the trial court was correct in its determination. Well, this would set precedent, though, for the future when you're talking about unique, unique, unique. But then it will be precedent for other parties. I would suggest, Your Honor, that I would suggest precedence to the Labor Board in the event that this issue rises again. Well, we've got procedural and substantive. Correct. And the procedural aspects are looking a lot cleaner with a mandamus or with a definitive decision by the board. And then you have the substantive, which is what criteria do you determine for purposes of finding whether somebody is essential or not? Essential services. And it would seem that the trial court judge made some findings that are not unique to security officers. That could, as Justice Zinoff suggested, could be precedential in other areas where if a union, as Mr. Weiner suggested, gives up the right to strike, then according to this judge's decision, they are, by definition, essential employees. So the dilemma here is twofold. It's the procedural morass that is extant and the precedent that we might set or will set when we resolve this case legally. And I would suggest, Your Honor, you have that authority under Rule 23 that is not precedential. What the argument here is, what I believe the trial court hung its head upon, is the language of the act itself, the policy. You have to look at, looking at the language of Section 14 is just not enough. You have to evaluate the statute as a whole and, if possible, construe it so that no term is rendered superfluous or meaningless. In this case, the employer's position of mandating that a no-strike commitment be in the contract renders the alternative means of resolution clause superfluous. It says, okay, you're not going to strike, and when the contract expires, if we offer you nothing, you have to take it. You have no other alternative. And basically, that's what it's been since this contract expired November 30, 2008. They have no other alternative means of resolution of the economic and non-economic issues that are at stake in the collective bargaining mechanism. You're saying they don't have the right to strike? It's in the contract. Well, they strike when the contract ends, or in between the two contracts. They have that right then. Did they waive the understanding, the subsequent agreement of understanding? The memorandum of understanding was brought, and this is in the record, as a result of an unfair labor practice charge filed by the union against the employer. This is all part of the record. The new union was certified December 29, 2008, 29 days after the old collective bargaining agreement expired. The employer sat down and said, well, we don't have to negotiate. We don't have to do anything. This contract has expired. So that's what led to the unfair labor charge going to the labor board. And with the direction of Hans De Kolk, who was the investigator assigned to the case, the memorandum of understanding was crafted. In other words – But in the crafting of the understanding, does it give the bargaining unit the right to strike? No. It says all terms – Does it prohibit the unit from strike? It does. It says all terms and conditions of the existing collective bargaining agreement shall remain in full force in effect. So it's essentially an extension of the agreement without an expiration date. Correct. Now, the only other remedy to this situation now, should this court find that the trial court was wrong, would be that the union would decertify and go on strike and create chaos in the King County judicial system. And that, I believe, is not the intent of the policy behind the Labor Act. It's to provide an expeditious alternative means of resolving disputes, not to create more disputes. Again, I can't emphasize enough, we are not looking to change the law of the state of Illinois. We are not looking to change the Illinois Public Labor Relations Act. We are only asking in this limited situation, based upon these very unique procedural circumstances, that this court find that the trial court did what it had to do under the circumstances and affirm the trial court's findings that these officers are entitled to interest arbitration. Was interest arbitration on the table when the memorandum of understanding was executed? No, the employer wouldn't come back to the bargaining table. They were refusing to bargain. That's what led to the unfair labor charge. Ultimately, after it came back to the table, impasse was declared, I believe, in November of 2009. I think the MOU was in July of 2009. Was interest arbitration on the table? Wasn't that the time to put it on the table? That's possible. It's possible. But again, that's bargaining. That's like the cart before the horse. To get them back to the table, we had to have the IRB and the employer sign off on the MOU, so that was our bargaining. They would not bargain until we got that MOU. Counsel, I have one final question. Take me back to 14P. Where do you discuss and rely on 14P in your brief, and what is your argument with respect to 14P? That it was contracted from the very beginning, and that's through the language of the collective bargaining agreement and Sheriff Randy's affidavit, that they agreed to it and allowed interest arbitration as the quid pro quo for the no-strike clause. Are you saying the purpose of Randy's affidavit was to corroborate this area of your argument? Yes, sir. I have nothing further. If you have any further questions, I'd be happy to address them. If you know, why did Sheriff Ramsey not make them deputies? Well, I think this is in the record as well. There was resistance.  It's on the record. There are memos in the record from the state's attorney's office stating that the sheriff could not make them regularly. They had to be peace officer deputies instead of court security. That's before the statutory change. And there's also an attorney general's opinion from Attorney General Ryan concerning that same issue prior to the statutory change. Prior to the statutory change. And I would suspect, and again, this is not based on the record. I'm guessing it was a monetary thing by the county board, though. We can't afford to hire 32, 36 more peace officer deputies. You all have experience. In virtually every other county, as we have here today, security is provided by peace officers. So I am suspecting, again, it's not in the record, that it was an economic decision by the county board. I go back far enough that they were retired and they slept a lot during court. I go back that far as well, Your Honor. In fact, I slept a lot in court when I was a young prosecutor. I think it was because we were so bored. Yes. Thank you. Thank you. Your Honors, I know I only have a few minutes, so I'll just touch on the procedural aspect of the case that counts for. I think at this point, the procedural history of this case is really immaterial to the decision today. And the reason I say that is because if you look at the letter that Executive Director Brosnan sent at C-7 in the record, the issue that he was resolving or not resolving was the Section 14 issue, which is not really an issue anymore. And what he did is he told the parties, you have a choice. You can go to court or you can file an unfair labor practice before the board. He wasn't making a decision on the merits of the case. He was giving the parties a decision. And the last sentence of the page says, while a court proceeding may be a more appealing method to obtain review of the board's administrative processes, the heart of this dispute concerns a matter I believe is appropriate for resolution by the board. So you don't consider that a punt? It was a punt, but it was nothing. A field goal, maybe? You know, an onside kick, something? He was clearly giving the parties a choice. This is the first time I've heard that this was somehow an incorrect procedure. I've yet to see any citations, any regulations or sections of the Illinois Labor Relations Act that were violated. So whether this was orthodox or unorthodox, unusual, there was nothing that was apparently incorrect about the procedure. And also keep in mind, under Section 8 of the Act, the arbitration rights are subject to the Uniform Arbitration Act, which does give a court a role in deciding issues of arbitrability, at least on the statutory end. So there's nothing improper about the practice, even if it was a somewhat unusual practice. The parties made a choice. It wasn't a choice that the executive director actually wanted them to make, but they made a choice, which they had the right to do. The circuit court, the board, felt error in its analysis of the statute, and that's why we intervened. So everybody was acting within their rights in this case. And so the idea that somehow there was an improper procedure here that warrants reversal is just not the case. And I guess I'll just cede the rest of my time to my co-counsel. He can discuss the rest of the issues. Thank you. Any questions? Thank you. Four quick points. Under 14D, there is the word voluntary or mutually agree, something like that, and we never did that. They're relying upon the affidavit of former Sheriff Ramsey, and it's at your record on page 538, and he does not refer to interest arbitration. He refers to contract arbitration, which is grievance arbitration under the contract. And if there was any doubt about that, the grievance procedure in the contract, at the record 487, is defined as an interpretation and application of any provision in this agreement. The arbitrator is limited on record at 489, shall neither amend, modify, nullify, ignore, or split or subtract from the provisions of this agreement. Interest arbitration would allow him to do all of those things. And if there's any doubt after that, at the record at page 514, the collective bargaining agreement contains a complete agreement provision, which means that everything was set as such. So even if Sheriff Ramsey said interest arbitration, it wouldn't mean anything because it's not in the agreement, and that's the complete agreement of the parties. Second of all, so they had the absolute right to strike, and that's undisputed, November 30th, 2008. They didn't do that. Instead, they entered into this MOU. They didn't have to enter into the MOU. They could have struck. They could have said no, just we're going to continue to bargain. They could have gone back to work and had the employer unilaterally implement the contract. There were a number of options. The union chose to do this. So if these employees have a complaint, they should look to the union, not to the law, not to the employers, because they voluntarily relinquished it. Lastly, they're claiming that we don't want to change the statute. They don't want to do anything to the statute. Well, I respectfully disagree with that. I say to this court that what they are in essence contending is to add another provision to the Illinois Public Labor Relations Act, and that provision is when a public sector union voluntarily relinquishes its right to strike upon the expiration of a collective bargaining agreement prohibiting strikes, it shall be entitled to interest arbitration. That's not in the act. Thank you, Your Honor. Any other questions? Thank you. We'll take the case under advisement. We're going to take a short recess.